SUMMERLIN v. CAROLINA AND NORTH-WESTERN RAILROAD COMPANY.

(Filed December 1, 1903.)

1. EVIDENCE — *Expert Evidence — Hypothetical Questions — Negligence—Personal Injuries.*

An expert must base his opinion upon facts within his own knowledge or upon the hypothesis of the finding by the jury of certain facts recited in the question.

2. EVIDENCE—*Harmless Error—Appeal—Negligence.*

Where an objection to evidence is improperly sustained, but the same evidence is subsequently admitted, it is harmless error.

3. EXPERTS—*Exceptions and Objections—Witnesses.*

> Where a witness has testified as .an expert to several material matters, a general objection to a particular question thereafter is insufficient to raise the question of his competency as an expert.

ACTION by Effie Summerlin against the Carolina and North-western Railroad Company, heard by Judge *T. J. Shaw* and a jury, at February Term, 1903, of the Superior Court of GASTON County. From a judgment for the defendant the plaintiff appealed.

*A. G. Mangum,* for the plaintiff.
*J. H. Marion, O. F. Mason* and *George W. Wilson,* for the defendant.

WALKER, J. This action was brought by the plaintiff, who is a minor and sues by her next friend, to recover damages for injuries alleged to have been caused by the defendant's negligence. The case turns upon the correctness of the rulings of the Court upon the evidence, and so much of the testimony of the plaintiff as we need consider was as folows:

J. W. Summerlin testified that he and his wife and child (the plaintiff) were passengers on the defendant's train from Gastonia in this State to Yorkville, S. C., on the 13th day of June, 1901, and that when the train arrived at Yorkville they tried to get off "as quick as they could, and he and the child got off, but his wife was at the door and was about to step off the car, when the train gave a jerk and she fell on the child and hurt it. The train moved forward as she attempted to leave the car, and she was thrown off behind and between the rails and fell on the child. The child was four years old last August. It has not as good use of one of its legs as of the other, one being smaller than the other." He first noticed the injury to her limb, two or three months after the fall, when he and his wife went to get a pair of shoes for the child. He

returned from Yorkville the following September. No physician was called to examine the child until June, 1902, when Dr. Reid examined it about the time this suit was brought.

Dr. Reid, witness for the plaintiff, testified that he examined the child in June, 1902, and saw that it had a limping gait. One of its legs was smaller than the other, but otherwise it was healthy. He moved the limbs and found a shortening behind and some other defects. There was the appearance of a green-stick fracture after the limb had time to heal. It was not a complete fracture. Dr. Glenn was present when he examined the child and assisted in the examination. He examined it again about a month before the trial, when he found that the muscles had improved a good deal and the limb looked healthier. The plaintiff then proposed to ask this witness the following question: "If the jury find from the evidence that on the 13th of June, 1901, the mother of this child had it in her arms and on the platform of the rear end of the railroad car, and fell from that platform to the road-bed, and during last summer you made an examination of the child and found the condition of the child's left leg and hip as you testified, to what would you attribute those conditions?" The defendant objected to this question; the objection was sustained, and the plaintiff excepted.

The plaintiff then proposed to ask this witness another question in which the facts were somewhat differently stated, but which was substantially the same in form and substance as the first question, and it was also excluded on objection by the defendant, and the plaintiff excepted.

The plaintiff then asked the witness the following question: "If the jury find from the evidence that on June 13, 1901, the mother of this child, with the child in her arms, fell from the rear end of a platform of a caboose car to the road-bed below and fell on the child, and if the jury further find that during the folowing summer the condition of the leg and hip

of the child was as you have described in your testimony, could not these conditions, in your opinion, have been caused by such a fall?" The defendant objected to this question, but the objection was overruled, and the witness answered it as follows: "Yes, it could have been caused by a variety of falls, and could have been less or greater than this. It would certainly have been sufficient to produce a fracture. The fall might not have produced the injury. That part of the child might not have come in contact with anything to cause it."

Dr. Sloan, a witness for defendant, testified to facts tending to contradict Dr. Reid. He stated that he found weakness in the ankle and slight weakness in the knee. In the thigh there was nothing more than the undevelopment of the muscles. There was no evidence of a green-stick fracture. The trouble was congenital. The defendant then proposed to ask the witness the following question: "If the jury should find that on the 13th day of June, 1901, this child had a fall and sustained a green-stick fracture, and no evidence of that fracture had been discovered by the parents of the child for several months afterwards, would you, in your opinion, say that had anything to do with the weakened condition of the ankle or the weakened condition of the knee that you found on the child?" To this question the plaintiff objected; the objection was overruled, and the plaintiff excepted.

The plaintiff then introduced Dr. Glenn, who testified to facts tending to corroborate Dr. Reid, and he proposed to ask this witness two questions, each of which was the same in substance and effect, if not in form, as the questions put to Dr. Reid, and which had been excluded as hereinbefore stated, except that one of the questions required the witness to base his opinion upon the fact as to the "condition of the child at that time" (the time of the mother's fall from the car), in addition to the other supposed facts inserted in the several questions, there being no evidence as to the child's condition

at that time. The questions asked Dr. Glenn by the plaintiff were also excluded, upon objection by the defendant, and the plaintiff again excepted.

The plaintiff then proposed to ask Dr. Glenn the following question: "If the jury should find from the evidence that on the 13th day of June, 1901, the mother of this child, with the child in her arms, fell from the rear end of the platform of a caboose car and fell on the child, and the jury further find that the condition of the child was as testified to, state whether or not, in your opinion, that could have been caused by such a fall?" This question was objected to by the defendant, but admitted by the Court, and the witness answered it in the affirmative.

The questions asked Dr. Reid and Dr. Glenn by the plaintiff's counsel, which were excluded by the Court, were not in accordance with the approved formula, nor were they so framed as to constitute a proper basis for the expression of an opinion by either of the experts.

There is nothing better settled than that a witness can ordinarily speak only of facts within his own knowledge, unless he is an expert, having special scientific knowledge, in which case he may give his opinion, but only upon the facts as they may be found by the jury. It is usual, therefore, to formulate what is called a hypothetical question, which should contain a recital of such facts as may have been testified to by the other witnesses. The party propounding the question may, it is true, so array the facts in the question as to present fully his contention in regard to them, provided there be testimony legally sufficient to sustain a finding of them by the jury. *State v. Bowman,* 78 N. C., 509; *State v. Cole,* 94 N. C., 958; *State v. Wilcox,* 132 N. C., 1120. The proper form of the question is: If certain facts assumed in the question to be established by the evidence should be found by the jury, what would be the witness' opinion, upon the facts

thus found true, of the matter involved and to which the inquiry is directed. *Woodbury v. Obear,* 7 Gray, 457; *Com. v. Rogers,* 7 Metc., 500; 41 Am. Dec., 458. Succinctly stated, the rule is that the expert must base his opinion upon facts within his own knowledge, or upon the hypothesis of the finding by the jury of certain facts recited in the question. *State v. Bowman, supra;* Rogers' Expert Testimony, sec. 27. There is said to be an exception when there is no conflict of evidence upon the material facts, in which case no hypothetical question is necessary. But, while we need not pass upon the correctness of this view, it seems that, at least, the jury must pass upon the credibility of the witnesses, and that the question should be hypothetical, whether there is a conflict or not. Rogers' Expert Testimony, secs. 26 and 31. It is not proper so to frame the question as to require the witness to draw a conclusion of fact, nor to require him to pass upon the effect of the evidence in proving controverted facts, nor should the expert be asked the question in such a manner as to call upon him to decide the very question which will be submitted to the jury. Rogers' Expert Testimony, sec. 26.

Applying these general principles to the particular questions under consideration, we think that those asked the witnesses, Dr. Reid and Dr. Glenn, by the plaintiff's counsel, and which were excluded by the Court, were incompetent as being in violation of the fundamental principle upon which the admissibility of expert testimony rests. They require the witness not to express a scientific opinion upon certain assumed facts, but to invade the province of the jury and to decide the very question in dispute as to the cause of the injury to the child. *Carpenter v. E. T. Co.,* 71 N. Y., 574. It would be competent for a physician or surgeon, who is properly qualified to give an opinion, to state that an injury might have been caused by a fall from a car, or that such a

fall, in other words, could have produced it; but when he is called upon to say that the injury was caused by the fall from a car and not by a fall from any other elevated place, or in any other way that might just as well have produced the same result, it is beyond his competency as an expert·to speak upon the subject, for he will then be deciding a fact and not merely giving an expert opinion founded upon a given state of facts.

The plaintiff's counsel, in the argument, relied on *State v. Bowman, State v. Cole* and *State v. Wilcox, supra,* as authorities to sustain his position that the questions were competent and in proper form, but a careful reading of those cases will disclose that the questions asked the witnesses in them were very different in form and substance from the questions asked in this case.

The answer of Dr. Reid to the question asked him by the plaintiff, and which was admitted by the Court, is a good illustration of the distinction we make. When asked, after a recital of the assumed fact, as to the condition of the child, could "the said condition, in his opinion, have been caused by a fall?" he replied, "Yes, it could have been caused by a variety of falls. It could have been less or greater than this. The fall was certainly sufficient to produce a fracture, but it might not have produced this injury. That part of the child might not have come in contact with anything to cause it." The statement of the witness in reply to this question shows the impossibility of giving any definite or reliable answer to the questions propounded by the plaintiff's counsel.

We are further of the opinion that, by Dr. Reid's answer to the plaintiff's second question, the latter got the full benefit of the evidence sought to be elicited by the other questions, as well as the doctors could give it, though the answer in itself may have been somewhat disappointing. The plaintiff's question, which was admitted by the Court, was in proper form

and completely covered the inquiry embodied in all of the interrogatories which were excluded. No harm, therefore, has come to the plaintiff by reason of the exclusion of the other questions put to Dr. Reid and Dr. Glenn, for the latter also testified, in answer to one of the questions asked him, that the condition of the child could have been caused by the fall from the car.

The question asked Dr. Sloan by the defendant's counsel, to which the plaintiff objected, it is now said was incompetent because the witness was not qualified as an expert before he was permitted to testify. This was the ground of objection, as stated in this Court, and the plaintiff's counsel relied on *State v. Secrest,* 80 N. C., 450, and *Flynt v. Bodenhamer,* 80 N. C., 205, but those cases are not in point. In both of them it appeared that objection was made to the witness, that is, to his competency, and not merely to a question propounded to him. It will be observed that in this case Dr. Sloan had testified to several facts before the question, to which objection was taken was asked, and it is apparent from the way the case is stated in the record that the objection below was to the competency of the particular question rather than to the qualification of the witness as an expert. There was no objection made at the time the witness was introduced and before he had testified to several material matters. Objections must be entered in apt time or they will be taken to be waived. We must infer from the record one of three things: (1) that there was evidence of the witness' qualification and that the fact of his being an expert was found by the Court, or (2) that he was admitted to be an expert, or (3) that there was no question made in the lower Court in regard to it. These inferences must be made because we cannot presume error, and the burden is upon the appellant to show it, and in this Court we must assume that every fact was proved and everything done necessary to sustain the ruling and judg-

ment of the Court below, unless it otherwise appears in the record. Nothing appears in this record tending to show affirmatively that the Judge committed any error in respect to the matter we are now considering.

A party cannot be silent while a witness is testifying, as a qualified expert, to matters of opinion which are material to the controversy, and, after he has so testified, object generally to some question which may be afterwards asked him, and then make the point as to his competency for the first time in this Court. If the objection had been made in apt time, we have no doubt the Judge below would have instituted the proper inquiry and found the facts as to the competency of the witness to testify as an expert, and those facts and his ruling thereon would have appeared in the case. This objection is untenable.

The form of the question asked Dr. Sloan was not specially assigned in this Court as a ground of objection. While the question is not in exact accordance with approved precedents in such cases, yet we do not think that there was any substantial or material defect in the form of the question. It particularly called for the opinion of Dr. Sloan as to whether the fall could have caused the weakened condition of the child's ankle and knee, and it must have been so regarded by the plaintiff's counsel, as no mention is made in his brief of any defect in the question itself.

Upon a review of the entire case, we discover no error in the rulings of the Court below, and it will be so certified.

No error.