J. C. LYNCH, ADMINISTRATOR OF ADA LYNCH, v. ROSEMARY
MANUFACTURING COMPANY.

(Filed 17 October, 1914.)

1. Evidence—Witnesses—Medical Experts—Opinion—Facts at Issue—Trials.

The plaintiff sues to recover damages of the defendant for the death of his intestate, caused by moving her from one of its tenant-houses to another during an illness of typhoid fever. *Held*, a question is competent, asked the witness, a medical expert, as to the causes of the intestate's death predicated upon the symptoms of the patient and attendant facts, assumed to have been found by the jury, and not objectionable as an expression of opinion upon a fact at issue to be passed upon by them; and while in this case the question asked included the question of proximate cause, it is further held that the case, if established, was so clearly the proximate cause that the error was rendered harmless.

2. Evidence—Witnesses—Medical Experts—Text-books.

Upon examination of a medical expert it is not permissible to read extracts from medical books for the purpose of cross-examining the witness and attacking the credibility of his evidence, or asking the witness if the opinion from the text-book was true or not; for the author has not made a statement under oath, subject to cross-examination, and such practice would permit by indirection what is expressly forbidden as evidence; but when the witness has testified as such expert, professing to have special training and knowledge from standard works of his profession, a general question of this kind may be allowed with the view of testing the value of his opinion.

3. Appeal and Error—Brief—Exceptions Abandoned—Rule of Court.

The brief of appellant must sufficiently state the assignments of error relied upon and give some reason or argument in support of them, or the assignments are deemed to have been abandoned, under Rule 34.

4. Measure of Damages—Wrongful Death—Net Value of Life—Children—Trials—Evidence.

In an action to recover damages for a wrongful death the present net value of the life wrongfully taken determines the measure of damages recoverable, and evidence tending to show the number and ages of the children of the deceased is incompetent; and where the judge in his charge has correctly stated in general terms that the jury should award a fair and just compensation for the pecuniary injury, and then specifically instruct them to find from the evidence what the earnings of the deceased would have been during the balance of his life, the instruction is held for reversible error.

APPEAL by defendants from *Connor, J.,* at March Term, 1914, of HALIFAX.

Civil action to recover damages for the wrongful killing of Ada Lynch, deceased, formerly wife of plaintiff administrator. Plaintiff alleged and offered evidence tending to show that, on 17 October, 1912, he and his then wife, the intestate, were tenants in one of defendant's

houses, and the intestate had been for some time and was then sick in bed with typhoid fever, and, in violation of their rights and against the will of plaintiff and deceased, they were wrongfully compelled to remove to another house, the wife being carried from her sick bed on a mattress to a wagon and driven therein ¼ mile to the other place, etc.; that from the shock and injury the intestate, pending or very soon after the removal, became unconscious and, sinking rapidly, died, as we gather from the testimony, in about one week; several witnesses, having duly qualified as experts, giving it as their opinion, on facts submitted, as in the finding of the jury, that the removal and the manner of it caused her death.

Defendants contended and offered evidence tending to show that the removal was not the cause of the death; that same was done on advice of a physician, cognizant of intestate's condition; that such a course would produce no injury, and that the wife and more especially the plaintiff himself consented to the removal taking place, etc.

The jury rendered the following verdict:

"1. Did the defendant Rosemary Manufacturing Company unlawfully, wrongfully, or negligently remove Mrs. Ada Lynch, the plaintiff's intestate, from the house in which she was sick to another house, against the protest of her husband or against her will, and thereby cause her death, as alleged in the complaint? Answer: Yes.

"2. If so, what damages is plaintiff entitled to recover of the defendant? Answer: Twenty-five hundred dollars ($2,500)."

Judgment on the verdict for plaintiff, and defendant excepted and appealed.

*S. G. Daniel, T. M. Pittman, A. P. Kitchin, Knight, Peebles & Midyett for plaintiff.*

*George C. Green, W. E. Daniel, and E. L. Travis for defendant.*

HOKE, J. The jury, accepting the plaintiff's version of the occurrence, have rendered a verdict that the defendant unlawfully and wrongfully caused the death of plaintiff's intestate, and on careful perusal of the record we find no good reason for disturbing their conclusion on the issue fixing liability on the company.

It is urged for error that some of the expert witnesses were allowed to give it as their opinion that the removal was the cause of the intestate's death, and in violation of the rule that a witness may not express an opinion on the very question at issue between the parties, citing the Court, among other cases, to *Summerlin v. R. R.,* 133 N. C., 557; but the position arises from a misconception of the decision in *Summerlin's case.* In that case questions propounded to an expert witness were excluded by the trial court and the ruling was affirmed because, as inter-

preted by the appellate court, the questions called for an opinion of the witness on a fact at issue and in controversy, towit, whether a fall produced the injury, as claimed by plaintiff. Speaking to the *ratio decidendi* of *Summerlin's case, Associate Justice Walker,* delivering the opinion, said: "There is nothing better settled than that a witness can ordinarily speak only of facts within his own knowledge, unless he is an expert, having special scientific knowledge, in which case he may give his opinion, but only on facts as they may be found by the jury." . . . And further: "Applying these general principles to the particular questions under consideration, we think that those asked the witness by plaintiff's counsel and which were excluded by the court were incompetent as being in violation of the fundamental principle upon which the admissibility of expert testimony rests. They require the witness not to express a scientific opinion upon certain assumed facts, but to invade the province of the jury and decide the very question in dispute as to the cause of the child's injury."

We are confirmed in this interpretation of *Summerlin's case* by what was said concerning it by the same learned judge in the case of *Parish v. R. R.,* 146 N. C., 125-127. In *Parish's case,* "plaintiff claimed to have been wrongfully injured by sudden and violent impact of the engine against the car in which plaintiff was a passenger at the time, and that, as a result, plaintiff was thrown against the arm of a seat and severely injured in his back, hips, and spinal column." The following question and answer were held proper: "If the jury find the facts to be, from the evidence, that the plaintiff was injured by falling back against the arm of a seat in the train, and struck his back in the region of the kidney, and at the time it gave him great pain, followed by faintness or nausea, and that the second morning thereafter he passed urine mixed with blood, and that several times since he has passed bloody urine, as late as the 5th day of this month; that his nervous system was affected, and when he makes a misstep or has a sudden jar, he has acute pain in the region of the kidney, followed by passing bloody urine, what, in your opinion, is the cause of his being affected in this way?" The witness answered: "In my opinion, the kidney was dislocated by the fall, and the dislocation is permanent, and the plaintiff will be disabled for life, unless he has the kidney removed by an operation."

There, as here, *Summerlin's case* was referred to by counsel as being against the ruling, and *Justice Walker,* speaking to *Summerlin's case* and its bearing on the question then presented, said: "We cannot agree with the learned counsel of the defendant that this case bears any resemblance to *Summerlin v. R. R.,* 133 N. C., 550. In that case the questions excluded by the court were so framed as to require the witness to express an opinion as to the existence of a fact which was contro-

verted, and it was there said by the Court that this was not the proper form for the question to take, but that the expert's opinion should be founded upon a hypothetical question containing a statement of facts which the jury might find from the evidence, and supposing, of course, that they will find them to be as stated in the question. The rule is stated in 3 Wharton and Stille's Medical Jurisprudence (5 Ed.), p. 580, as follows: "An opinion that an injury resulted from a certain designated act, being the one upon which the action is based, as distinguished from an opinion that certain causes would produce certain results, is improper as usurping the province of the jury."

The questions objected to in the present case are clearly within the rule for the reception of such evidence, being opinions of medical experts as to the cause of intestate's death predicated upon the symptoms of the patient and attendant facts, assumed to have been found by the jury and are in accord with the authorities referred to and others of like kind in this jurisdiction. *Beard v. R. R.,* 143 N. C., 136-139; *Jones v. Warehouse Co.,* 137 N. C., 338; *S. v. Jones,* 68 N. C., 443.

In one or two of the questions the counsel, in zealous concern for their client's interest, asked if it was the *"proximate* cause of intestate's death"—an addenda to the usual formula that might well have been objectionable if the facts permitted any distinction between the two, but in this instance the cause, if established, was so clearly the proximate cause that the term may properly be considered as harmless error. *Beard v. R. R.,* 143 N. C., at page 139.

Again, it was contended that error was committed to defendant's prejudice in permitting the following question: "I ask you if all recognized medical authorities do not teach that typhoid fever patients must not be moved, if possible to do without it?"

The question by plaintiff was allowed on cross-examination of a medical expert who had treated the intestate in this case and testified for defendant, in effect, that the removal, in his opinion, had not unfavorably affected the patient in this instance, and that, on the facts of the case, it would likely increase her chances for recovery.

It is very generally recognized that extracts from medical books are not admissible in evidence, and for the very sufficient reason that the author does not write under the sanctity of an oath and has not been subjected to cross-examination, and the decisions of this State are to the effect that statements from these books may not be presented as such in the arguments of counsel nor introduced by means of questions put on cross-examination, as by reading an opposing opinion from a text-book and asking the witness if it is or is not true, for this would have the effect of putting the statement in evidence and thus accomplish by indirection what is expressly forbidden. *Butler v. R. R.,* 130 N. C., 15;

*Huffman v. Click,* 77 N. C., 55; *Melvin v. Easeley,* 46 N. C., 386; for, as said by *Bynum, J.,* in *Huffman's case:* "If this practice were allowed, many of our cases would soon come to be tried not on the sworn testimony of living witnesses, but upon publications not written under oath."

The principle, however, is not as exigent in case of cross-examination, and when a witness has testified as an expert, professing to have special training and knowledge from standard works of his profession, a general question of this kind may be allowed with a view of testing the value of his opinion. *Sale v. Eichberg,* 105 Tenn., 333; *Brodhead v. Wiltse,* 35 Iowa, 429; 17 Cyc., p. 273. It was suggested on the argument that there was error in the charge of the court, in effect, "That though J. C. Lynch did consent, if Ada Lynch, the intestate, did not, then her removal would be a wrongful act, and if the proximate cause of her death, the first issue should be answered 'Yes.' " But such an exception is not open to defendant on the record, the same not having been sufficiently stated in the brief, within the meaning of Rule No. 34, "That exceptions in the record, not set out in appellant's brief or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him." The exception No. 20 in the record is stated in connection with exception No. 19, and the only mention made of it or which has any relevancy to it is that the same "is relied upon for error," and must therefore be taken as abandoned.

While we find no cause for disturbing the verdict of the jury on the first issue, we must hold that there was error in the charge of the court on the second, that as to the amount of damages. On this issue his Honor, although correctly stating to the jury in general terms that they would award what is a fair and just compensation for the pecuniary injury, in giving more specific direction, instructed them that they would "take all the evidence and say about what her earnings would have been during the balance of her life, about how long you find she would have lived." In this charge we think his Honor failed to observe and note the rule established by our decisions for the admeasurement of the damages for this kind of an injury, "That it is the *present net* value of the life which has been wrongfully taken." *Speight v. R. R.,* 161 N. C., pp. 80 and 86; *Ward v. R. R.,* 161 N. C., at page 186; *Mendenhall v. R. R.,* 123 N. C., pp. 275 and 278; *Pickett v. R. R.,* 117 N. C., 616.

In this connection we deem it not amiss to call attention to the case of *Bradley v. R. R.,* 122 N. C., 972, as to the incompetency of evidence touching the number and ages of the intestate's children.

For the error indicated, defendant is entitled to a new trial of the issue as to damages, and it is so ordered.

Partial new trial.